Nuccio Domenico (Domenico Nuccio) and Others, Respondents, *v.* Thomas O'Connor, Appellant.

Third Department, July 6, 1922.

Chattel mortgages — action for wrongful sale of property under chattel mortgage and eviction from real property by reason thereof — failure of plaintiffs to sustain burden of proof of bad faith — verdict for plaintiffs contrary to weight of evidence — chattels taken by mortgagee and sold under safety clause in mortgage — no eviction resulted therefrom nor from any act of mortgagee — judgment excessive in any event — plaintiffs abandoned farm — defendant not liable for ejectment.

In an action for an alleged wrongful sale of personal property under a chattel mortgage, and for an eviction from real property by reason thereof, the plaintiffs failed to sustain the burden of proof of bad faith, and the finding of the trial

---

* Now respectively. Gen. Constr. Law, § 37a, as added by Laws of 1920, chap. 917, and Civ. Prac. Act, § 339.— [Rep.

court to the contrary was against the weight of the evidence, where it appears that the defendant sold his farm with stock and tools to the plaintiffs, taking a chattel mortgage on the stock and tools as collateral security for payments provided for in the contract of sale, said mortgage containing the usual clause providing that, if at any time the mortgagee deemed himself unsafe, he might take and sell the chattels, and it further appears that, at the time of the sale, the buildings and stock and tools were in an excellent condition but that the plaintiffs allowed the buildings to become dilapidated, the farm machinery to stand outdoors, the small tools and various implements to disappear and the stock to become diminished in numbers and poorly conditioned.

The foreclosure of the chattel mortgage, together with certain testimony by one of the plaintiffs, denied by the defendant, that the defendant ordered the plaintiffs off the farm, was not sufficient evidence upon which to base a finding that plaintiffs were evicted.

In any event the plaintiffs were not entitled to the judgment rendered in their favor as several items were improperly charged therein against the defendant.

The plaintiffs abandoned the farm and the defendant is not liable as for ejectment.

APPEAL by the defendant, Thomas O'Connor, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Madison on the 25th day of October, 1921, upon the decision of the court rendered after a trial at the Madison Special Term.

*E. H. O'Connor* [*H. C. Stratton* of counsel], for the appellant.

*Capecelatro & DeRosa* [*Harry M. Garvey* of counsel], for the respondents.

KILEY, J.:

This action was brought against defendant for an alleged wrongful sale of personal property under a chattel mortgage, and for an eviction from real property by reason thereof. The facts, briefly, are these: On the 11th day of December, 1918, the plaintiffs entered into a written agreement with the defendant in and by which they agreed to buy defendant's farm of 160 acres for $12,250, $1,500 of the purchase price to be paid down, the balance at $75 per month, during the year 1919, omitting the month of January, and on January 1, 1920, $1,000 was to be paid, and $250 on each first day of January thereafter. It will be seen there was but $1,500 paid down. With the sale of the real estate and by the same instrument was sold a large quantity of personal property, twenty-three cows, five horses, wagons, sleighs, drags and mowing machines and reaper and all other tools and machinery necessary to carry on successfully a large farm. The contract provides that when the purchase price is paid down to $6,000 the defendant shall give to plaintiffs a good and sufficient deed, and the premises should be free of all incumbrance. As collateral security for the payment of the sums in and by the

contract covenanted to be paid, until such time as the purchase price should be reduced as aforesaid, it was provided that plaintiffs should give a chattel mortgage on the personal property conveyed which was done. I am aware that one of the original grantees to said contract has died and that his executrix has been made a party plaintiff; I am treating the plaintiffs as the original parties to the contract as a matter of convenience. The chattel mortgage, which, without question, was duly executed, delivered and filed, contained this clause: " and in case the said Thomas O'Connor, or his assigns, shall at any time deem himself or said property, debt or security unsafe, it shall be lawful for him to take possession of said property, and to sell the same at public or private sale previous to the time mentioned for the payment of said debt, applying the proceeds as aforesaid, after deducting all expenses for the sale and keeping of said property." The respondents contend that the appellant had no occasion to " deem himself or said property, debt or security unsafe." The determination of this question will be decisive of this appeal. In that connection it is proper to recall that only one witness, one of the plaintiffs, was called on the main question for the plaintiffs. In view of the findings it is also necessary to seek in the record what was the condition of this personal property and the real estate when both were turned over to the plaintiffs in December, 1918, and the condition as time went on down to October 11, 1920, when said property was sold under defendant's chattel mortgage. The complaint does not question the good faith of the transaction in the sale to plaintiffs of all of the property included in the contract, nor is it claimed in the complaint that they did not get all of it as set forth in the contract. The farm was a good productive farm. Buildings were house, hay and cow barn and horse barn, henhouse, icehouse, milkhouse and silo. All of the buildings were painted new and the house newly papered inside the year before the farm was taken over by the plaintiffs. There were twenty-three milch cows and a bull, purchased by the defendant the year before he sold to plaintiffs, at from $125 to $170 a head; five horses, a new mowing machine, a reaper and binder that had been used but two years, a disk harrow in good condition and a new spring-tooth harrow, horse rake, open buggy, top buggy, two-seated wagon, two plows, two cultivators, bob sled, light pair of bobs, cutter, two sets double harness, light single harness, one heavy lumber wagon, hay rack, milk wagon, grain drill, corn planter, wheelbarrow, milk cans, pails, shovels, hoes and forks. The plaintiffs testified that all of this personal property was turned over to them in December, 1918, when they went into possession of the farm. The cow barn was equipped with fifteen Curtis patent

stanchions. These plaintiffs had examined all of this property including the personal property before purchasing, and had sought advice outside of defendant with reference to it and to running the same as a farm. Much evidence, of a wholesale nature, was given by the plaintiffs that they worked hard and tried to do the best they could. Such evidence is not material here on the question at issue. Much incompetent evidence was offered and received, the court could not exclude it, as it was not objected to. One pair of the horses was worth $600, the other pair $400 and a single horse fourteen years old for which defendant paid $60. Defendant's last month's milk check before he turned the farm over to the plaintiffs, that would be November, 1918, was $485, and the previous checks run about the same. It will be noted that defendant did not receive the milk checks; they were payable to and received by plaintiffs, so that his monthly payments were but a small portion of what should have been received for milk. Defendant kept watch of his security as he had a right to do. He saw the stanchions torn out of the cow barn, he saw the silo tumbling down and the staves disappearing. He saw the mowing machine broken and left out in the field; all of the large machinery left out in the fields exposed to the weather, the small tools disappearing, a buggy for which he paid $100 and had ridden only twice himself, was a wreck, wheels broken. At the house window lights and the sashes were being broken out and plaster coming off the walls. It was provided in the chattel mortgage that the cows should be kept good in number and kind. Defendant went to the barn before he took possession of the property under his chattel mortgage and before he expressed any intention to do so, and found calves and heifers sold; they were not covered by the chattel mortgage, but good husbandry would have suggested keeping them to replace cows that were growing older; he found only seventeen of the original twenty-three cows left; that they were poor and ill-cared for is fairly inferable from the evidence. Defendant learned that the horses were being driven nights, they had become thin in flesh, and a horse out of one of the teams had broken its leg. This, however, was about or after defendant had served notice of his intention to act under his mortgage; but it reflects the care that this property, concededly necessary to the security of plaintiffs' debt, was receiving. The cutter and bobs were gone, milk wagon had disappeared, and all of the small tools and implements formerly used by defendant and turned over to plaintiffs were not to be found. The fifth horse had been sold by the plaintiffs before the foreclosure of the mortgage. Under these conditions the trial court found that defendant acted unreasonably and with bad faith in electing to act under the safety clause in his

mortgage. This holding is based on the ruling found in *Hawver* v. *Bell* (46 N. Y. St. Repr. 447; affd., 141 N. Y. 140) and *Hyer* v. *Sutton* (59 Hun, 40). The history of the evidence appearing in the opinions in these cases is meager and fragmentary and involved other questions than those presented here, and does not help us on the question of the weight of evidence. In *Allen* v. *Vose* (34 Hun, 57) this question is very fully discussed. The burden of proof of bad faith was on the parties alleging it, the plaintiffs in this action. (*Stage* v. *Van Leuven*, 77 App. Div. 646). Plaintiffs did not meet that burden in this case. The manner in which the sale was conducted is not assailed. There was a large attendance; an auctioneer was employed; the bidding was open; as before stated much of the property had disappeared; only seventeen of the original twenty-three cows were there; defendant bought but a small portion of the property — three or four cows — and on this open sale the property sold only brought about $1,300. Can there be any question but what defendant did have reason to deem his security unsafe? I cannot conceive of a cleaner case where a mortgagee could properly and legally deem himself unsafe. The finding of the trial court to the contrary is against the weight of the evidence. I might stop here were it not for the finding of the court that eviction resulted from this foreclosure, and from the further fact that defendant ordered plaintiffs off the farm; the first finding falls with the fall of the reason based upon the foreclosure in bad faith. The evidence as to the finding that defendant ordered the plaintiffs to vacate the premises was given by one witness, one of the plaintiffs. It was to the following effect: that on the day of the sale some of the cows ate some of the cabbages; that the witness came to where the defendant was and told him the cows were in the cabbage, and that defendant replied, " get to hell out of here." Defendant denies it, and again the plaintiffs had the burden of proof and the finding is against the weight of evidence. I am at a loss to find where plaintiffs would, in any event, be entitled to the large verdict awarded them by the court. The evidence is that this field of cabbage was not fenced, the fence was down; defendant did not have it; his three or four cows did not eat it, yet he is charged with it, and so with the corn; one witness swore he cut part of this corn for the plaintiffs and that they had it; defendant did not have it, yet he is charged a large sum for it. Plaintiffs dug the potatoes, took away the crops, so far as defendant knows after the sale. He did not take possession or control until the fore part of May, 1921. Fault is found with defendant because he did not buy the property in at a higher price than it brought. He was not obliged to do so. Under the circumstances, as shown by the evidence, the plaintiffs

abandoned this farm and the defendant was not liable as for ejectment.

Judgment reversed and a new trial granted, with costs.

We disapprove of the 6th, 9th, 10th, 11th, 12th, 14th, 15th, 16th, 17th, 18th, 19th, 20th, 21st, 22d, 23d, 24th, 25th, 26th, 28th, 29th, 30th, 31st, 32d, 33d, 34th findings of fact, and of the 1st, 2d, 3d, 4th, 5th and 6th conclusions of law.

All concur.

Judgment reversed on law and facts and new trial granted, with costs to the appellant to abide the event. The court disapproves of findings of fact numbered 6, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31, 32, 33 and 34.